UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:17 CV 194 |
| ) | |
| MARIA MOLSON a/k/a MARIA T. ROSS, ) | |
| individually and d/b/a PORTER'S TAP, INC. ) | |
| d/b/a PORTER'S TAP BAR & GRILL; and ) | |
| MTM SERVICES INCORPORATED ) | |
| d/b/a PORTER'S TAP, INC. d/b/a PORTER'S ) | |
| TAP BAR & GRILL d/b/a LLOYD & MARIA ) | |
| ENTERPRISES, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION and ORDER

### I.  BACKGROUND

On April 27, 2017, plaintiff J & J Sports Productions, Inc. ("J & J Sports"), filed suit against defendants Maria Molson (also known as Maria T. Ross, doing business as Porter's Tap, Inc., and doing business as Porter's Tap Bar & Grill), individually, and MTM Services Incorporated (doing business as Porter's Tap, Inc., doing business as Porter's Tap Bar & Grill, and doing business as Lloyd & Maria Enterprises, Inc.). (DE # 1.) The record indicates that defendants were served on May 4, 2017. (DE ## 6, 7.) By rule, defendants had 21 days after service of the summons and complaint to file a responsive pleading. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). To date, defendants have not filed any responsive pleading or otherwise appeared in this case. At plaintiff's request, the Clerk entered default on July 7, 2017. (DE # 13.)

J & J Sports filed this motion for default judgment on August 1, 2017 (DE # 14), to which defendants have not responded. Plaintiff asserts that it is entitled to judgment on its claims for violations of 47 U.S.C. §§ 553 and 605.[1] (DE # 14 at 1.) Plaintiff seeks damages in the amount of $ 10,000 in statutory damages, $ 30,000 in enhanced statutory damages, $ 1,111.50 in attorneys' fees and $ 430 costs. (DE # 14-2 at 8.)

## II. LEGAL STANDARD

The court may enter default judgment against a party against whom affirmative relief is sought when it fails to plead or otherwise defend. FED. R. CIV. P. 55(b)(2). "The grant or denial of a motion for the entry of a default judgment lies within the sound discretion of the trial court . . . ." *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983). If the court determines that the defendant is in default, all well-pleaded allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Id*. at 1323.

## III. FACTS

Based on defendants' default, the court takes the allegations in the complaint as true. The affidavits submitted with the motion for default judgment further establish the veracity of the allegations made in the complaint.

On May 2, 2015, Floyd Mayweather, Jr., fought Manny Pacquiao in a boxing match. (DE # 1 ¶ 16.) J & J Sports was granted the exclusive nationwide commercial

---

[1] Plaintiff's complaint also contained a third claim for conversion. (DE # 1 at 6.) However, plaintiff does not seek default judgment on that claim, nor does he mention it anywhere in his motion or supporting brief. (*See* DE ## 14, 14-2.) Accordingly, the court will not address the conversion claim and will consider it abandoned.

distribution rights to the broadcast of this fight, referred to as "*The Fight of the Century: Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program*" (the "*Program*"). (*Id.*) The *Program* included all "under-card bouts" and the fight commentary encompassed in the television broadcast. (*Id.*)

On the night of the fight, the *Program* was displayed at Porter's Tap, at 6405 Kennedy Avenue in Hammond, Indiana. (*Id.* ¶ 7, 11.) Specifically, Lucia Sanchez ("Sanchez"), an auditor, visited Porter's Tap and witnessed the *Program* on one television monitor behind the bar. (DE # 14-3 at 1.) Porter's Tap did not advertise its exhibition of the *Program*, and Sanchez was told by a woman at the bar not to post anything on Facebook which would indicate that Porter's Tap was showing the fight. (*Id.* at 3.) There were 8 people inside the establishment, and no cover charge was assessed. (*Id.*) Porter's Tap is owned and operated by defendant MTM Services Incorporated, of which defendant Maria Molson is an officer. (*Id.* ¶ 7.)

Through sub-licensing agreements with J & J Sports, commercial entities were able to acquire rights to publicly exhibit the *Program* within their commercial establishments, including bars and restaurants. (*Id.* ¶ 17.) However, neither defendants, nor anyone else associated with Porter's Tap, had a sub-licensing agreement with J & J Sports. (*Id.* ¶ 11; DE # 14-4 ¶ 7.) Thus, plaintiff alleges that defendants unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the *Program* at its commercial establishment. (DE # 1 ¶ 19.)

## IV. LEGAL CONCLUSIONS

   *A.   Jurisdiction*

The court has subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiff brings this action pursuant to federal statutes 47 U.S.C. §§ 553 and 605 of the Federal Communications Act of 1934. Venue is proper under 28 U.S.C. § 1391(b)(2). Personal jurisdiction is established over defendants due to defendants' minimum contacts with Indiana.

   *B.   Liability*

Taking the allegations in the complaint as true, defendants unlawfully intercepted or received the *Program* and displayed it, for purposes of direct or indirect commercial advantage and/or private financial gain. (DE # 1 ¶¶ 19–20.) They did so without authorization. (*Id.* ¶ 11; DE # 14-4 ¶ 7.)

According to 47 U.S.C. § 553(a), "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." According to 47 U.S.C. § 605(a), "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit . . . ."

4

Whether § 553 or § 605 applies depends on whether defendants intercepted the *Program* from a cable or a satellite transmission. Plaintiff admits, however, that it is impossible to isolate the precise means by which defendants pirated the signal.[2] (DE # 14-2 at 1.) Nevertheless, given the undisputed conduct of defendants, the court finds that defendants have necessarily violated either § 553 or § 605.

Furthermore, both statues provide that any person aggrieved by their violation may bring a civil action against the violator. 47 U.S.C. §§ 553(c)(1) and 605(e)(3)(A). J & J Sports has properly brought such an action. Therefore, the court finds defendants liable to J & J Sports for their violation.

V.    **DAMAGES & FEES**

Although plaintiff is permitted to plead its § 553 and § 605 claims in the alternative, it may only recover damages under one of the statutes. *J & J Sports Prods., Inc. v. Navarro*, 229 F. Supp. 3d 793, 800 (N.D. Ind. 2017). Plaintiff requests damages under § 605, rather than § 553. (DE # 14-2 at 8.) In this case, the court will accept plaintiff's request to proceed under § 605, so as not to deprive plaintiff of potential damages due to defendants' inaction. *See J & J Sports Prods., Inc. v. McCausland*, No. 1:10-CV-01564-TWP, 2012 WL 113786, at *2 (S.D. Ind. Jane. 13, 2012) (citing *J & J Sports Prods., Inc. v. Aguilera*, 2010 WL 2362189, *2 (N.D.Ill. June 11, 2010) ("The Court concludes that although the precise means of transmission has not been determined, under the

---

[2] This is particularly true given that defendants' non-appearance has made discovery unavailable.

circumstances of this case, where Plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of Defendants' failure to appear or defend in this action, Plaintiff should not suffer the resulting prejudice.")). However, this distinction is ultimately irrelevant, as the court is choosing to award an amount of damages that happens to be permissible under either statute's cap. *See Navarro*, 229 F. Supp. 3d at 801.

Specifically, the court will determine plaintiff's damages pursuant to 47 U.S.C. § 605(e)(3)(C).[3]

### A. Statutory Damages

Under § 605(e)(3)(C)(i), the aggrieved party may elect to recover either actual damages or statutory damages. Those statutory damages must be between $ 1,000 and $ 10,000, per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). The court has discretion to choose an amount of statutory damages within that range. *Navarro*, 229 F. Supp. 3d at 802 ("It is well established that the district courts have broad discretion to determine awards in cases like this."). Plaintiff has requested the maximum statutory damages for defendants' single violation: $ 10,000. (DE # 14-2 at 6, 8.)

Another judge in this district recently addressed this same issue in a case with similar facts. *See J & J Sports Prods., Inc. v. Estrella*, No. 2:14-CV-171, 2016 WL 1183202

---

[3] Although a hearing on damages is sometime necessary following an entry of default judgment, *see Dundee Cement Co.*, 722 F.2d at 1323, here, the damages are ascertainable without such a hearing. In this case, the damages are bounded by statute and are supported by detailed affidavits.

6

(N.D. Ind. Mar. 28, 2016). In that case, J & J Sports also sought damages against a bar under § 605 for displaying a boxing match without authorization. *See id*. at *1. There, the court found it was "fair" to award statutory damages in the amount that would have been paid had defendant legally contracted with plaintiff. *Id*. at *3. The court here agrees that such an award is fair.

Plaintiff has provided a chart that lists the price for establishments to purchase and display the *Program* depending on their maximum capacity. (DE # 14-4 at 11.) The price for an establishment with a capacity of 1 to 100 persons was $ 3,000. (*Id*.) The price was $ 6,000 for a capacity of 101 to 200 persons. (*Id*.) Plaintiff did not provide the total occupancy of Porter's Tap. However, only 8 people were present at the bar, and the court has no knowledge that the capacity was greater than 100. Thus, the court finds that the evidence supports damages based on the lower capacity.

The court awards $ 3,000.00 in statutory damages to J & J Sports.

B.　　*Enhanced Damages*

In addition to statutory damages, plaintiff requests enhanced damages of three times the amount of statutory damages, or $ 30,000. (DE # 14-2 at 4, 8.) "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)." 47 U.S.C. § 605(e)(3)(C)(ii).

As evidence of defendants' willfulness, plaintiff's president attests that the *Program* cannot be mistakenly, innocently, or accidentally intercepted. (DE # 14-4 at 3.) Moreover, according to the undisputed allegations of this case, defendants' violation "was done willfully and for purposes of direct and/or indirect commercial advantage and/or financial gain." (DE # 1 ¶ 20.) Therefore, the court may, in its discretion, award enhanced damages.

In order to arrive at an enhanced damages figure, courts have considered factors such as: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event." *Estrella*, 2016 WL 1183202, at *3. Additionally, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id*.

The allegations and evidence indicate that defendants have committed a single offense, and it is their first offense. There is no evidence of significant monetary gains, given that only 8 people were present at Porter's Tap. On top of that, there was no cover charge assessed to patrons and no evidence of any advertising for the event. In fact, Sanchez's assertion that she was told not to post on Facebook further indicates that defendants did not want to advertise the event and were not attempting to gain substantial funds from their exhibition of the *Program*.

In *Estrella*, the court awarded enhanced damages of $ 6,600, or three times the amount of statutory damages. *Estrella*, 2016 WL 1183202, at *3. But, in that case, the defendant charged a $ 5 cover fee to patrons and advertised the fight to attract patrons. *Id*. at *1, *3. On the other hand, in *J & J Sports Productions, Inc. v. Navarro*, 229 F. Supp. 3d 793, 806 (N.D. Ind. 2017), the same district court judge that had presided over *Estrella* chose not to award enhanced damages to J & J Sports as a matter of law on a motion for summary judgment. In *Navarro*, only 15 people were present at the establishment during the fight. *Id*. The defendants in that case did not advertise the fight, did not collect a cover charge, and did not make any other attempts at financial gain from showing the fight. *Id*. Thus, regarding the enhanced damages factors, the case at hand falls closer to *Navarro* than *Estrella*.

However, unlike in *Navarro*, defendants have defaulted, and so it is undisputed that they acted willfully and for financial gain. Also, the court agrees with J & J Sports that the total damages should be greater than the actual licensing fee or contract price, in order to deter future violations of the statute.

Therefore, the court awards $ 1,000.00 in enhanced damages to J & J Sports.

C. *Attorneys' Fees and Costs*

Plaintiff also requests attorneys' fees and expenses as part of this default judgment. Plaintiff asserts it is entitled to these fees and expenses, pursuant to § 605. (DE # 14-2 at 8.) According to the statute, "the court . . . *shall* direct the recovery of full

costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added).

A district court generally has wide discretion in determining a reasonable attorneys' fee award. *Moriarty v. Svec*, 233 F.3d 955, 963 (7th Cir. 2000). Along with its motion for default judgment, plaintiff's counsel has submitted an affidavit and a detailed billing statement establishing reasonable attorneys' fees and costs in the amount of $ 1,541.50 for the actions taken by the attorneys through the filing of the default judgment motion. (DE ## 14-6, 14-7.) That amount includes costs of $ 400 in filing fees and $ 30 in mailing fees. (DE # 14-7.)

Accordingly, the court awards plaintiff $ 1,541.50 in attorneys' fees and costs.

## VI. CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment (DE # 14) is **GRANTED.** The Clerk is directed to **ENTER FINAL JUDGMENT** in this case in favor of plaintiff J & J Sports Productions, Inc., and against defendants Maria Molson (also known as Maria T. Ross, doing business as Porter's Tap, Inc., and doing business as Porter's Tap Bar & Grill), individually, and MTM Services Incorporated (doing business as Porter's Tap, Inc., doing business as Porter's Tap Bar & Grill, and doing business as Lloyd & Maria Enterprises, Inc.), in the amount of $ 5,541.50.

**SO ORDERED.**

Date: January 9, 2018

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT